# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> STATE OF OKLAHOMA; ) </br> MARY FALLIN, Governor of the State of ) </br> Oklahoma, in her official capacity only; ) </br> THE OKLAHOMA OFFICE OF ) </br> JUVENILE AFFAIRS; ) </br> ROBERT E. CHRISTIAN, Executive ) </br> Director of the Oklahoma Office of ) </br> Juvenile Affairs, in his official capacity ) </br> only; THE OKLAHOMA BOARD OF ) </br> JUVENILE AFFAIRS; ) </br> T. HASTINGS SIEGFRIED, Chairman of ) </br> the Oklahoma Board of Juvenile Affairs, in ) </br> his official capacity only; and ) </br> CATHY OLBERDING, Superintendent of ) </br> the L.E. Rader Center, in her official ) </br> capacity only, ) </br> ) </br> Defendants. ) | Case No. 06-CV-673-GKF-FHM |

## OPINION AND ORDER

This matter comes before the Court on plaintiff United States of America's Emergency Motion to Enforce Consent Decree and Motion to Modify Consent Decree (Dkt. 260 and 261). The plaintiff filed its motions on September 1, 2011, eight days before the Consent Decree was set to expire. Defendants responded on September 9th, and plaintiff replied on September 13th.

On September 9, 2008, this Court entered a Consent Decree concerning the conditions of confinement at the L.E. Rader Center ("Rader"), a secure juvenile treatment center in Sand Springs, Oklahoma. The Consent Decree established remedial measures in three areas:

Protection from Harm (including youth-on-youth violence, inappropriate staff relationships with youth, sexual misconduct between youth, and excessive force by staff on youth), Mental Health Care Including Prevention of Suicide and Self-Harm, and Special Education.  The Consent Decree expired by its own terms on September 9, 2011.

On April 13, 2011, the Oklahoma Office of Juvenile Affairs (the "OJA") publicly announced the closure of the Rader facility as of September 30, 2011.  By August 1, 2011, the last youths in custody at Rader had been moved to the Central Oklahoma Juvenile Center ("COJC") in Tecumseh, Oklahoma, the Southwest Oklahoma Juvenile Center ("SWOJC") in Manitou, Oklahoma, or to other placements.

In its motion, the United States asks this Court to extend the duration of the Consent Decree, and to order the defendants[1] to 1) provide comprehensive details on the mental health and educational services provided to youth transferred from Rader to COJC, SWOJC, or other facilities; 2) produce recent Performance-Based Standards data and monthly reports from COJC and SWOJC; and 3) direct the defendants to allow the United States and its expert consultants full and complete access to COJC and SWOJC, including but not limited to a youth-on-youth assault reported to have occurred at COJC on August 11, 2011.

For the reasons set forth below, this Court declines to extend the term of the Consent Decree beyond its stated termination date, and declines to extend the scope of the Consent Decree to the separate, pre-existing juvenile centers located in Tecumseh and Manitou.

---

[1] Pursuant to Fed.R.Civ.P. 25(d), Mary Fallin is hereby substituted as Governor of the State of Oklahoma, T. Hastings Siegfried is hereby substituted as Chairman of the Oklahoma Board of Juvenile Affairs, and Cathy Olberding is substituted as Superintendent of the L.E. Rader Center.

## II. Discussion

"Consent decrees have elements of both contracts and judicial decrees. A consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'" *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004), *quoting Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992). Among other things, the parties to the Consent Decree agreed to the following:

- "Termination. This Consent Decree shall terminate three (3) years from the date it is ordered by the Court. . . . Under no circumstances will this Consent Decree be extended beyond the three (3) year period, unless by agreement of the parties and the Court that some portion of the Consent Decree needs to be extended for compliance." (¶ 114).

- "Nothing in this Consent Decree shall prevent the State from modifying or closing Rader, or developing alternative placements for the youth currently in the facility." (¶12).

- "'Rader' means the L.E. Rader Center, located at 13323 W. Highway 51, Sand Springs, Oklahoma or any secure facility that is used to replace Rader, but does not include any separate youthful offender facility the State may operate."[2] (¶ 27).

This last-mentioned provision – the definition of "Rader" – figures prominently in the briefing. The United States argues that COJC and SWOJC "replace" Rader, and therefore this Court should order the State to provide information from, and access to, those facilities under the terms of the Consent Decree. The State argues that the Consent Decree does not apply to COJC and SWOJC because they did not "replace" Rader.

---

[2] Under Oklahoma law, a "youthful offender" is a juvenile charged with certain serious, statutorily-listed crimes set forth in OKLA. STAT. tit. 10A, §§ 2-5-202, 2-5-205 and 2-206. The State of Oklahoma does not operate any "separate youthful offender facility," therefore neither party argues the exclusionary clause applies.

In its 2010 session, the Oklahoma Legislature directed the OJA to "initiate a request for proposals for the construction of a suitable facility to house juveniles within its custody to replace a facility with capacity in excess of one hundred twenty-five (125) available secure beds." OKLA. STAT. tit. 10A, § 2-2-806(A). Although Rader was not named in the legislation, "the legislative intent . . . is that the new facility replaces Rader." Okla. Atty. Gen. Op. 2011-9, p. 3. No such replacement facility has yet been built.[3]

COJC and SWOJC both pre-existed this Court's Consent Decree. *See* OKLA. STAT. tit. 10A, § 2-7-606 [COJC]; OKLA. STAT. tit. 10A, § 2-7-608(B) [SWOJC]. OJA argues that, throughout its history, and throughout the term of the Consent Decree, it has transferred youth between its institutions. It has now transferred all youth out of Rader and into other placements, including COJC and SWOJC.

"Replace" has been defined as: "To place again, to restore to a former condition. [citation omitted]. Term, given its plain, ordinary meaning, means to supplant with substitute or equivalent. [citation omitted]. To take the place of." BLACK'S LAW DICTIONARY (Fifth Edition, 1979). It cannot reasonably be said that COJC and/or SWOCJ "take the place of," or "supplant [as] substitute[s] or equivalent[s]" of Rader. OJA previously had three institutions. Now it has two. Rader was OJA's only "maximum secure" facility. It has closed and has not yet been replaced. COJC and SWOCJ are pre-existing "medium secure" facilities. Thus, COJC and SWOCJ are not being "used to replace Rader" as contemplated by the Court and the parties to the Consent Decree. This Court therefore concludes the language defining "Rader" in Paragraph 27 of the Consent Decree does not support granting plaintiff's motions.

Plaintiff also argues that developments over the last several months constitute substantially changed circumstances justifying modification of the Consent Decree. A federal

---

[3] On February 25, 2011, the OJA scrapped its plans to build a new juvenile detention center in Ada, Oklahoma.

court has the equitable power to modify material provisions in its own consent decree in the face of changed circumstances. *David C. v. Leavitt*, 242 F.3d 1206, 1210 (10th Cir. 2001). That power is "an inherent judicial power and cannot be limited simply because an agreement by the parties purports to do so." *Id.* Thus, the language in Paragraph 144 of the Consent Decree, set forth above, which if literally applied would limit the Court's power to extend the Consent Decree absent the agreement of the parties, is not binding on the court.

"[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383. If the moving party meets its burden, the court should consider "whether the proposed modification is suitably tailored to the changed circumstance." *Id.* "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 385.

Here, the Consent Decree itself indicates the parties foresaw the closure of Rader and the transfer of youth out of the Rader facility: "Nothing in this Consent Decree shall prevent the State from modifying or closing Rader, or developing alternative placements for the youth currently in the facility." Consent Decree at ¶ 12. In record hearings before this Court in 2007, defendants' representatives testified that Rader would likely be closed because the physical structure could not be renovated to rectify a number of serious deficiencies. Those deficiencies included, but were not limited to: areas outside of staff line of site which accommodated rapes of 13 year old males by 19 year old males, and exposed pipes below the ceilings in the mental health unit, on which youth at risk of suicide had attempted to hang themselves. The plaintiff

concurs that Rader's closure was warranted, telling the Court it "does not fault the State for its decision to close [Rader]."[4]

The closure and the transfer of youth from Rader are events actually anticipated at the time the plaintiff signed the Consent Decree. The decree does not extend federal oversight to youth transferred from Rader to other OJA facilities, or to youth in those pre-existing separate juvenile facilities, either before or after the stated termination date. The Consent Decree was "narrowly drawn and extends no further than necessary" to correct the violation of the Federal right of juveniles confined at Rader, as required by federal law. *See* Prison Litigation Reform Act, 18 U.S.C. §3626(a)(1). The Court finds and concludes that plaintiff has not met its burden of establishing a significant change in circumstances not actually anticipated at the time it entered the decree. Therefore, the current situation does not warrant revision of the Consent Decree.[5]

---

[4] Plaintiff's expert agrees: "As discussed in previous reports, Rader's physical plant has many flaws, which do not lend themselves to renovations to adequately meet juveniles' needs for treatment and safety. Costs of renovation would be prohibitive. OJA recognizes those limitations and has chosen to close Rader rather than attempt to renovate the facility." Report of Anne M. Nelson, Dkt. 260-10, p.32.

[5] The Court notes that the action brought by the United States and the consequent Consent Decree improved the conditions of confinement of juveniles at Rader. The State made progress in implementing the agreed-to reforms. In order to convey a general sense of the progress made, the Court highlights the following items contained in the most recent reports of the federal monitors, dated August 30, 2011:
- "Superintendent Olberding is to be commended for the considerable progress in achieving compliance with the Consent Decree in the area of Protection from Harm under very challenging circumstances." Report of Anne M. Nelson, MSW, MPA, expert consultant in the area of Protection from Harm, Dkt. 260-10, p. 5. In her final report, Ms. Nelson found Rader to be in substantial compliance with 17 provisions relating to Protection from Harm, and in partial compliance with 7 provisions. *Id.* at pp. 6-7.
- "Rader under the direction of the new facility director and newly created mental health clinical director position were beginning to make great strides. These were becoming particularly evident in the admission/intake screening process, the suicide screening process, appropriate treatment planning, and improved communication between psychology/psychiatry/nursing/mental health professionals/line staff." Report of Debra K. DePrato, M.D., expert consultant in the area of Mental Health Care, Including Prevention of Suicide and Self-Harm, Dkt. 260-11, p. 9. DePrato found Rader to be in compliance with 6 provisions relating to Mental Health Care, Including Prevention of Suicide and Self-Harm, and in partial compliance with 14 provisions.
- Kelly Dedel, Ph.D., expert consultant in the areas of Investigations, Suicide Preventions, and Quality Assurance, found Rader to be in substantial compliance with 1 of 6 provisions of the Consent Decree, in partial compliance with 4 provisions, and reported that insufficient documentation was available to rate the facility's level of compliance in 1 provision.

For the reasons set forth above, the Emergency Motion to Enforce Consent Decree and Motion to Modify Consent Decree (Dkt. 260 and 261) are denied. The Court Clerk is hereby directed to substitute Mary Fallin as Governor of the State of Oklahoma, in her official capacity only, T. Hastings Siegfried as Chairman of the Oklahoma Board of Juvenile Affairs, in his official capacity only, and Cathy Olberding as Superintendent of the L.E. Rader Center, in her official capacity only.

IT IS SO ORDERED this 21st day of September, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma